ROBERTSON, Justice,
for the Court:
After the complainants, P. D. Strong and others, had rested their case, the Chancery Court of Rankin County sustained the defendants’ motion to exclude the evidence and dismiss the bill of complaint. The complainants appeal.
*1389 On November 27,1973, the United States District Court for the Southern District of Mississippi entered its order dividing Rankin County into school attendance areas. Property within the corporate boundaries of the City of Pearl and certain geographical areas of Rankin County outside Pearl’s municipal boundaries were designated the Pearl School Attendance Area.
The City of Pearl, Mississippi, by ordinance passed on May 20, 1976, created the Pearl Municipal Separate School District (PMSSD), under the authority of Mississippi Code Annotated section 37-7-605 (1972). The boundaries of PMSSD were coterminous with the corporate boundaries of the City of Pearl, and encompassed all school buildings of the Pearl School Attendance Area. This created a rather anomalous situation because there were students attending these schools (now within Pearl’s corporate boundaries) from geographical areas within the Pearl School Attendance Area but outside the municipal boundaries of the City of Pearl.
To correct this situation, the Rankin County Board of Education on May 31, 1976, unanimously adopted an order requesting the PMSSD to add all the remaining territory of the Pearl School Attendance Area to the Pearl Municipal Separate School District.
Even though the territory to be added lay within the Rankin County School District, the PMSSD, by order dated May 31, 1976, accepted the Rankin County Board of Education’s request and added this territory to PMSSD.
These orders of PMSSD, its trustees, and the Rankin County Board of Education, together with other required data, were filed with the State Educational Finance Commission with a request for its approval. [Mississippi Code Annotated section 37-7-605 (1972)]. That Commission, by order dated June 21, 1976, approved the PMSSD with added territory and provided that said district would be officially and legally constituted as of July 1, 1976.
The complainants/appellants contend that while section 37-7-605 outlines the action required of the Pearl Municipal Separate School District where additional territory is added, still this section must be read in harmony with Mississippi Code Annotated section 37-7-105 (1972), which makes additional requirements of the Rankin County Board of Education, where the territory added to the PMSSD is taken from the Rankin County School District.
The defendants/appellees answer that section 37-7-605 is complete within itself, that they scrupulously followed its provisions, and that compliance with section 37-7-105 was not necessary nor required.
All of the assignments of error boil down to the question of whether section 37-7-105 is applicable to this case.
Section 37-7-605 provides:
“After school districts are reorganized and reconstituted under the provisions of Article 1 of this chapter, any municipality may thereafter be declared to be and constituted as a municipal separate school district by ordinance of the governing authorities thereof. However, such action of said governing authorities shall not be effective until same shall have been submitted to and approved by the state educational finance commission.
“Additional territory adjoining a municipal separate school district may be added to any municipal separate school district by the county board of education with the consent of the board of trustees of the municipal separate school district and subject to the approval of the state educational finance commission as is more specifically provided by Article 1 of this chapter.” [Emphasis added].
Section 37-7-105 provides:
“In cases where the county board of education abolishes, alters, or creates a school district without a petition therefor as is otherwise provided in sections 37-7-107, 37-7-109. the county board of education shall publish the order creating, altering. or abolishing such district or districts in some newspaper published and having a general circulation in such county once each week for three consecutive *1390 weeks, which said order shall be duly-certified by the president of said county board of education. If no newspaper be published in said county, then such order shall be published for the required time in some newspaper having a general circulation therein, and, in addition, a copy of said order shall be posted for the required time at three public places in the county. The order so published shall contain a provision giving notice that said order shall become final thirty days after the first publication of said notice unless a petition is filed protesting against same within such time. In the event no such petition be filed, the said order shall become final at said time. However, in the event twenty per cent of the qualified electors of any school district created, altered, or abolished by such order shall file a petition with the county board of education, within thirty days after the first publication of said notice, protesting against the creation, alteration, or abolition of such district, then an election shall be called and held, on order of the county board of education, by the county election commission, after publication of legal notice of such election, which said election shall be held within thirty days after the first publication of the notice of such election. At such election the question shall be submitted to the qualified electors of the district or districts affected and from which a petition is filed as to whether or not such district or districts shall be created, altered, or abolished as provided in the said order of the county board of education. If a majority of those voting in said election in each district affected and from which a petition is filed shall vote in favor of the order of the county board of education then such order shall become final. If a majority of those voting in said election in any district from which a petition is filed shall vote against the order of the county board of education then such order shall be void and of no effect and no further attempt to make the proposed change in such district shall be made for a period of at least two years after the date of said election.” [Emphasis added].
On May 20, 1976, the governing authorities of the City of Pearl did all that was required of them to be properly constituted as a municipal separate school district and the PMSSD was so constituted on that date, subject to the approval of the State Educational Finance Commission. [Section 37-7-605]. However, we think there are additional procedures specifically set forth in Section 37-7-105 that must be followed by the Rankin County Board of Education before it can legally alter the Rankin County School District on its own motion.
It was mandatory that a notice be published where the Rankin County Board of Education was proceeding on its own motion. Section 37-7-105 is very clear on this point when it provided:
“In cases where the county board of education abolishes, alters, or creates a school district without a petition therefor as is otherwise provided in sections 37-7-107, 37-7-109. the county board of education shall publish the order creating, altering. or abolishing usuch district . . fEmphasis addedl
Notice would not be required “If a petition signed by a majority of the qualified electors of specifically described territory of an existing school district shall be filed with the county board of education requesting that said described territory be taken from such existing district and annexed to an adjacent district”. [Section 37-7-109].
When a county board of education proceeds on its own motion, Section 37 — 7—105 makes no distinction whether it is abolishing, altering or creating a school district: “[T]he county board of education shall publish the order creating, altering, or abolishing such district . . . .” When territory was subtracted from the Rankin County School District, the District was unquestionably “altered”. Where the school district was altered, the mandatory requirement of the statute, that notice be published, was activated.
Section 37-7-105 goes on to provide that “in the event twenty per cent of the quali *1391 fied electors of any school district . altered,” protest against the alteration, “then an election shall be called and held,” and “[a]t such election the question shall be submitted to the qualified electors of the district or districts affected . . . as to whether or not such district or districts shall be altered, ... as provided in the said order of the county board of education.” If a majority of those voting in said election vote in favor of the order, then the order becomes final. If a majority of those voting in said election vote against the order, then the order shall be void and of no effect. [Sec. 37-7-105].
The only difference between the case at bar and Winston County v. Woodruff et al., 187 So.2d 299 (Miss.1966), is that in Winston County the School District was abolished and in the case at bar the School District was altered. The words “abolish” and “alter” are equal in section 37-7-105; no distinction is made between them.
In Winston County we noted that the Winston County Board of Education acted “expressly pursuant to the authority of Mississippi Laws 1953, Chapter 16” [which included as Section 6(b), § 37-7-105 of the 1972 Code].
In Winston County, this Court also said: “Publication was made as required by Chapter 16, and a sufficient number of qualified electors not having protested, no election was called.” 187 So.2d at 300.
We are of the opinion that this general language of Section 37-7-605:
“Additional territory adjoining a municipal separate school district may be added to any municipal separate school district by the county board of education
presupposes that the county board of education will comply with the specific language of section 37-7-105 as to what the county board must do in order to tender good title, so to speak, to the territory which it is requesting be added to the municipal separate school district.
Since we have reached the conclusion that section 37-7-105 does apply to the procedure to be followed by the Rankin County Board of Education, and since these mandatory requirements were not met, the trial court was in error in sustaining the motion to exclude and to dismiss the bill of complaint. It follows, therefore, that the judgment must be reversed and this cause remanded for further action not inconsistent with this opinion.
REVERSED AND REMANDED.
PATTERSON, C. J., INZER and SMITH, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.