LEE, C.J.,
for the Court:
¶ 1. Moran Hauling Inc. (“Moran”) submitted a bid to the Department of Finance and Administration (“DFA”) through the Bureau of Building, Grounds and Real Property Management (“BOB”) for the reconstruction of Buccaneer State Park.
¶ 2. BOB and the Public Procurement and Review Board (“PPRB”) are offices within DFA. BOB is a building authority that assists state agencies and the like with construction projects. PPRB is empowered to approve state contracts, review bid decisions, and adopt contract regulations. In this ease, DFA through BOB is the determining agency, and PPRB is the appellate, de novo review board. For the purposes of this opinion, we refer to DFA, BOB, and PPRB collectively as DFA, unless otherwise noted.
¶ 3. DFA determined Moran’s bid to be nonresponsive. Moran appeals, arguing: (1) the circuit court erred in affirming DFA’s rejection of Moran’s bid because it was supported by substantial evidence; and (2) DFA’s rejection of Moran’s bid was in violation of the Mississippi’s procurement statutes and regulations.
FACTS AND PROCEDURAL HISTORY
¶ 4. DFA solicited bids for Phase I of the reconstruction of Buccaneer State Park in Waveland, Mississippi. The bids were opened on July 3, 2008.
*1128 ¶ 5. Moran submitted a bid of $3,629,406.24 on the required proposal form. One section of the form asked if the value of the mechanical subcontract exceeded $50,000, and if so, the contractor was required to list the subcontractor’s name and certificate-of-responsibility (“COR”) number. Another section of the form asked if the value of the electrical subcontract exceeded $50,000, and if so, the contractor was required to list the subcontractor’s name and COR number. Moran answered “No” to both the mechanical and the electrical subcontract questions. Moran was the only contractor of the three that submitted bids to value the project’s mechanical and electrical portions below $50,000 each, and therefore, was the only contractor to answer “No.”
¶ 6. Guild Hardy Architects (“Guild”) contacted Moran to verify its bid. Initially, Moran informed Guild that Moran intended to self-perform the work; therefore, no subcontractors would be hired for the mechanical or electrical portions of the job. The next day, Moran changed its mind and informed Guild that Ace Contractors Inc. (“Ace”) would be subcontracted for both the mechanical and electrical work.
¶ 7. Moran received notification that its bid was nonresponsive, and as a result, it was rejected. DFA accepted GM & R Construction Inc.’s bid of $3,808,800 as the lowest and best bid. Moran filed a protest with BOB, claiming DFA’s rejection of the bid was unreasonable, arbitrary, capricious, and in violation of the regulations for the State Board of Contractors and DFA’s regulations pertaining to submission of subcontractors. BOB affirmed its original determination that Moran’s bid was nonresponsive. Moran requested reconsideration and a hearing before PPRB. A hearing was held, and after a de novo review, Moran’s bid was found to be non-responsive. Moran appealed to the Hinds County Circuit Court, which ruled in favor of DFA. This appeal followed.
STANDARD OF REVIEW
¶ 8. When reviewing an administrative agency’s decision, this Court is limited in its review and will only determine “whether or not the order of the administrative agency (1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.” Tillmon v. Miss. State Dep’t of Health, 749 So.2d 1017, 1021 (¶ 15) (Miss.1999). “Substantial evidence means something more than a ‘mere scintilla’ or suspicion.” Pub. Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (¶ 13) (Miss.2000). The Mississippi Supreme Court has further defined substantial evidence as “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Id. When addressing an administrative agency’s decision, if it “is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.” Id. at 430 (¶ 35).
¶ 9. Additionally, “the agency’s interpretation of its own rules and statutes which govern its operation” are given great deference. Tillmon, 749 So.2d at 1020 (¶ 15).
DISCUSSION
I. DFA’S DETERMINATION
¶ 10. When submitting a bid to BOB, contractors must ensure the bid is timely and accurately completed according to BOB’s manual and the instructions to bidders in order for the bid to be deemed “responsive.”
*1129 ¶ 11. The bid-proposal form contained a portion pertaining specifically to the mechanical and electrical aspects of the project. The portion of the form questioned:
Mechanical and Electrical Subcontractors (5.05 of Bidder’s Checklist)
Is the value of the MECHANICAL SUBCONTRACT over $50,000.00? Yes _No_
If yes, the mechanical subcontractor’s name and Certificate of Responsibility Number (COR) must be provided in its entirety at the time this proposal is submitted.
Mechanical Subcontractor:
Name_COR No-Is the value of the ELECTRICAL SUBCONTRACT over $50,000.00? Yes_ No_
If yes, the electrical subcontractor’s name and Certificate of Responsibility Number (COR) must be provided in its entirety at the time this proposal is submitted.
Electrical Subcontractor:
Name_COR No_
Moran checked “No” to both questions and, as a result, did not provide the names of a mechanical or electrical subcontractor.
¶ 12. According to Moran, it had originally planned to perform the mechanical and electrical aspects of the project “in-house.” Yet its in-house mechanical and electrical contractors did not hold current COR numbers and were incapable of performing the work. By the time Moran attempted to name a subcontractor for the mechanical and electrical work, eight days had passed since the bids were opened, making the submission untimely.
¶ 18. DFA’s determination that Moran’s bid was inaccurate and nonresponsive was based on substantial evidence and was not arbitrary and capricious. Therefore, the circuit court did not err in affirming DFA’s determination. This issue is without merit.
II. DFA RULES AND REGULATIONS
¶ 14. Moran also contends the circuit court erred in affirming DFA’s decision because DFA’s explanation for rejecting the bid was inconsistent with Mississippi’s procurement statutes and regulations. DFA’s Procedure Manual section 600.55 states that a general contractor is to submit a list of “all Subcontractors to be used on the Project within seven (7) days after written notice of contract award.” Moran claims that DFA’s determination that its bid was nonresponsive because it failed to list the mechanical and electrical subcontractors is in direct violation of the seven-day rule present in section 600.55.
¶ 15. Moran ignores the fact that the proposal form repeatedly stated that if the mechanical and electrical jobs exceeded $50,000, the subcontractors for those jobs were to be listed. If a term of a contract is ambiguous, “specific clauses in a contract are to be given greater weight than general ones.” Estate of Parker v. Dorchah, 673 So.2d 1879, 1382 (Miss.1996). Here, the specific requirement for listing mechanical and electrical subcontractors supercedes the general listing of subcontractors in section 600.55.
¶ 16. Moran argues that if DFA intends to declare any bid that does not list subcontractors as nonresponsive, then this authority must be reflected in its regulations and instructions to bidders. Moran’s bid was declared nonresponsive because: it was inaccurate in its valuation of the mechanical and electrical portions of the project; it failed to disclose a certified subcontractor capable of doing the work; and its attempts to cure the bid’s nonresponsive *1130 ness were inaccurate and untimely. DFA did not determine the bid to be nonrespon-sive simply on the failure to list subcontractors. As noted above, DFA clearly listed in the proposal form if the mechanical and electrical portions of the job exceeded $50,000, the bidder was required to list the respective subcontractors performing the work.
¶ 17. Additionally, great deference is afforded to the agency when interpreting its own rules and statutes. Melody Manor Convalescent Ctr. v. Miss. State Dep’t of Health, 546 So.2d 972, 974 (Miss.1989). And “[t]he burden of proof rests with the party challenging the actions of an administrative agency.” Id. Moran failed to show that DFA acted arbitrarily or capriciously in interpreting its own rules and statutes. This issue is without merit.
¶ 18. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.